### NATIONAL BANK OF CHESTER v. GUNHOUSE & CO.

1. A mortgage to secure future advances is postponed to a mortgage of later date given for a present consideration, as to all indebtedness contracted under the security of the first mortgage after notice had by the first mortgagee of the second mortgage.

2. In cases of equitable cognizance the findings of fact by a Circuit Judge, deduced from testimony taken orally before him, or from evidence submitted in writing, will not be disturbed unless clear error is shown by reason of an entire absence of evidence to support such findings, or because the manifest weight of the testimony in the cause is the other way; and the burden of showing this is upon the appellant.

3. The indebtedness of the drawer of bills of exchange, which are accepted by the drawees for accommodation only, is not a contingent, but a primary liability.

4. Renewal notes are not payment unless it is shown by the party alleging payment that there was an express agreement that they should be so received, or unless they produce payment.

Before PRESSLEY, J., Chester, October, 1881.

Action commenced February 9, 1881, by the National Bank of Chester against I. L. Gunhouse, Myer Wachtel and Samuel Gunhouse, constituting the firm of I. L. Gunhouse & Co., and Fanny Kaufman, for foreclosure of mortgage. The plaintiff's mortgage is stated in the opinion; the mortgage held by Fanny Kaufman was to secure the repayment of money advanced by Moses Strauss on the two notes of $5000 each, described in that mortgage. Other facts, and also the Circuit decree, appear in the opinion.

Fanny Kaufman appealed on the following exceptions:

1. Because His Honor erred in finding "that the officers of the bank prove that in July, 1876, Gunhouse & Co. was indebted to the bank upwards of $35,000, when he should have found that said sum of $35,000 was only a contingent liability of I. L. Gunhouse & Co. as drawers of fifteen inland bills of exchange, duly accepted by responsible parties.

2. That His Honor erred in finding that all transactions of a new character between plaintiff and Gunhouse & Co. were duly settled and the old debt secured by mortgage was reduced by payments from time to time to the sum of $14,815.46, when the inland bills of exchange, a contingent liability of I. L. Gunhouse & Co. for $35,000 on the 12th of July, 1876, the day the plaintiff's mortgage was given, were all finally paid by the acceptors of said bills of exchange, by notes of other parties duly paid at maturity, or by inland bills of exchange on other parties duly accepted and paid.

3. That His Honor erred, as matter of law, in not finding that any settlement or transactions between the National Bank of Chester and I. L. Gunhouse & Co. could not affect the rights of Fanny Kaufman, the first endorser on the notes secured by the second mortgage.

4. That His Honor erred in not finding, as matter of law, that the fifteen inland bills of exchange, the original liability of I. L. Gunhouse & Co., on the 12th July, 1876, constituted a contingent liability only and were paid, and have no connection with the present debt to the bank.

5. That His Honor erred in holding that the sum of $15,636.48 is the remainder of the original liability of $35,000 secured by the mortgage to the bank 12th July, 1876; but he should have held that the said sum of $15,636.48 arose from advances made by the bank subsequent to the second mortgage.

6. That His Honor erred in not finding, as matter of law, that the indebtedness of I. L. Gunhouse & Co. to the bank on the 1st of April, 1880, claimed to be the mortgage debt as shown by the six inland bills of exchange one memorandum check and an over-draft of $1200 in 1879 put in evidence by the bank and claimed as the balance due on their bond and mortgage, arose from advances made by the bank subsequent to the second mortgage of Fanny Kaufman.

7. That His Honor erred in not finding as matter of law, that the mortgage debt claimed by the bank being advances to I. L. Gunhouse & Co. made subsequent to the second mortgage, the bank having actual notice of the second mortgage, and the bond secured by the mortgage being intended to cover future advances, that the lien of the mortgage of the bank was postponed to the lien of Fanny Kaufman's mortgage, and that she is entitled to the proceeds of the sale of the mortgaged premises, to be applied to the satisfaction of her debt in priority to the mortgage of the bank.

8. Because His Honor erred in not finding that the paying of the memorandum checks of I. L. Gunhouse & Co. by the bank to an amount exceeding one hundred thousand dollars, after the execution of the second mortgage, was a loan by the bank and created the indebtedness which it is now claimed the proceeds of the sale of the mortgaged premises shall be applied to.

9. That His Honor erred in not finding, as matter of law, that the extravagant advances by way of loan on memorandum checks, subsequent to the second mortgage, were in fraud of the rights of Fanny Kaufman under said second mortgage.

10. Because His Honor erred in not finding that the bank was guilty of gross *laches* in connection with the six inland bills of exchange, which are claimed as part of the mortgage

debt, and in fraud of the rights of Fanny Kaufman under the second mortgage.

11. Because His Honor erred in finding that there was any admission, on the part of Moses Strauss, during the time he owned the second mortgage, as to the time when the mortgage debt now claimed by the bank was created, but he should have held that there was no evidence whatever of such fact.

12. Because His Honor erred in finding that the mortgage of the bank was made by I. L. Gunhouse & Co. in good faith for debts previously contracted, when he should have found that the said mortgage was in violation of the National Bank Law, and therefore void.

13. Because His Honor erred in not finding that the proceeds of the sale of the mortgaged premises should be first applied to the debt of Fanny Kaufman upon her two notes.

Messrs. *S. P. Hamilton, A. G. Magrath*, for appellant.

Messrs. *J. & J. Hemphill*, contra.

July 15, 1882. The opinion of the Court was delivered by

Mr. Chief Justice Simpson.—I. L. Gunhouse & Co., formerly merchants in the town of Chester, on July 12th, 1876, executed a bond in the penal sum of $15,000 to the National Bank of Chester, with mortgage on valuable real estate in said town to secure the same. The condition of the bond was as follows, to wit: " Whereas the said I. L. Gunhouse & Co. stand indebted to the National Bank of Chester, aforesaid, in certain large sums of money, either as makers, payers, or endorsers of notes, or as drawers or acceptors of bills of exchange, as well as memorandum checks. And whereas the said I. L. Gunhouse & Co. may hereafter, from time to time, become indebted to the said National Bank of Chester by other notes, bills of exchange, or otherwise. Now the condition of the above obligation is such that if the above bound I. L. Gunhouse, Meyer Wachtel, and Samuel Gunhouse, our heirs, executors and administrators, shall and do well and truly pay or cause to be paid unto the above-named National Bank of Chester, its certain attorneys, successors, or assigns, the full and

just sum due upon all our obligations of any and every kind to the said the National Bank of Chester, as the same severally mature and become payable, including as well those hereafter contracted as those now existing, as also any and all renewals, consolidations and substitutions of any of said obligations, without fraud or further delay, then the above obligations to be void and of no effect, or else to remain in full force and virtue."

Afterwards, to wit, on November 21st, 1876, the said Gunhouse & Co. gave two notes for $5000 each to the defendant, Fanny Kaufman, with a second mortgage on the same property as that embraced in the mortgage to the bank to secure said notes. These notes and mortgage were transferred to one Moses Strauss, but subsequently were returned to Fanny Kaufman by assignment, who at the time of this action was the owner and holder.

Gunhouse & Co. finally failed in business. At the time of the failure the bank claimed that they were indebted to it in the sum of $14,815.46. This amount on April 1st, 1880, was consolidated into three notes, one for $4815.46, one for $5000, and the third for $5000, making in the whole the $14,815.46. This sum appears to have been made up of the following evidences of debts, then in the possession of the bank, to wit: five drafts on Strauss Bros., two of December 26th, 1877, for $1581.00 each, one of January 2d, 1878, for $3387.86, two of January 9th, 1878, for $3461.88 and $305.51, respectively; a draft on A. J. Salinas & Son, February 5th, 1879, for $2500; balance memorandum checks, $771.72; and overdraft, $1226.49.

On February 9th, 1881, this action was commenced, alleging the indebtedness of the defendant Gunhouse & Co. to the bank as above stated in the sum of $14,815.46, claiming that this amount was due under the penalty of the bond for $15,-000 and the balance secured by the mortgage referred to herein above, and the complaint prayed judgment for that sum, a sale of the mortgaged premises, and for the deficiency.

It appearing to the court that Moses Strauss had assigned his interest in the second mortgage to Fanny Kaufman, she was made a party by order of the court, dated March 25th, 1881. Fanny Kaufman answered, and the real contest in the case is

between the bank and this defendant, the contest being which of the two mortgages shall have priority over the mortgaged property. On March 28th, 1881, Judge Fraser referred the case to a special referee, " to take the testimony on the issues of fact presented by the pleadings in the case, and to make his report of the same to the court." This report was made, embracing a mass of testimony, and the cause came on for hearing before Judge Pressley, who in January, 1882, pronounced a decree sustaining the bank, ordering the property to be sold for its benefit, and forever barring the defendants, and Fanny Kaufman, and all persons claiming under her or them, of all right, title, interest, and equity of redemption in the mortgaged premises so sold, or any part thereof.

The defendant, Fanny Kaufman, has appealed upon numerous exceptions. It will be found, however, that the case hinges upon one general question, and that it is a question of fact, to wit : Was the debt now claimed by the plaintiff, and upon which the action rests, contracted before the execution of the second mortgage held by Fanny Kaufman and set up in her answer as a security for two notes presented by her ? There is little or no controversy as to the principles of law involved and applicable to the case. It is not denied that the bank had knowledge of the execution of the second mortgage, and if the debt sued on was contracted after this mortgage, all the authorities agree in the proposition that in such case the senior mortgage will be postponed to the second. *Hopkinson* v. *Rolt*, 9 *H. L. Cas.* 514 ; *Seaman & Moore* v. *Fleming*, 7 *Rich. Eq.* 283 ; *Shirras* v. *Craig*, 7 *Cranch.* 34 ; *Truscott* v. *King*, 6 *N. Y.* 147 ; *Jones Mort.* §3, 74.

The appellant does not deny that the amount sued for is due, and it is admitted in appellant's argument that if this debt is a renewal of a previous indebtedness existing prior to the second mortgage, that it must rank as of the previous debt and be protected by the deed which secured its payment ; so that, as has already been stated, the material question is, Was this debt of the bank in existence when the second mortgage was executed ? Judge Pressley has expressed himself in the decree very decidedly upon this question. He says that the officers of the bank

prove that in July, 1876, when the senior mortgage was executed, Gunhouse & Co. were indebted to the bank upwards of $35,000, and therefore the mortgage was taken to secure said indebtedness and future advances. He further says that all transactions of a new character between plaintiff and Gunhouse & Co. were duly settled, and the old debt secured by mortgage was reduced by payments from time to time to the sum of $14,815.46. For that amount Gunhouse gave new notes, and frequently thereafter acknowledged the correctness of said settlement, and still acknowledged it; and further, "I am satisfied that said amount, with interest, is yet due to the plaintiff on the *old debt* secured by the mortgage, and that no debt incurred after the date of said mortgage is included in said amount. The referee to whom the taking the testimony was committed has filed the testimony, showing that $15,636.48 was due to plaintiff on said bond and mortgage on November 16th, 1881." Upon these facts he ordered the land to be sold and the proceeds applied to the amount thus found due.

The first matter for consideration is how far these findings of fact by Judge Pressley are controlling upon this court. The cases upon this subject will be found collected by the reporter, Mr. Shand, in 12 *S. C.* 613 to 617. The citations there made embrace all of the cases on this subject decided by this court up to that date. The principle upon which the court has acted appears to be, that in appeals in cases of equitable cognizance the findings of fact by a Circuit Judge deduced from testimony taken orally before him, or from evidence submitted in writing, as in this case, will not be disturbed, unless clear error is shown, by reason of an entire absence of evidence to support such findings, or because the manifest weight of the testimony in the cause is the other way, and the burden of showing this is upon the appellant. These cases have not been directly overruled since, and on the principle of *stare decisis,* and to preserve that uniformity and harmony which should always exist in the administration of justice, and which alone can give confidence and satisfaction to litigants, and to the people, in my opinion these cases until overruled should be followed. They should not be made to apply in one case and disregarded in an-

other.    I shall therefore regard them as authority, and under their light proceed to examine the decree.

The testimony clearly shows, that at the date of the mort-gage to the bank, to wit, July 12th, 1876, the bank held fifteen inland bills of exchange drawn by I. L. Gunhouse & Co., on and accepted by various parties and business houses, amounting to $35,000 ; that the mortgage in question was executed to secure the ultimate payment of this indebtedness either as an original indebtedness, as well as all renewals, consolidations, and substitutions, and also any future advances.    The fact that the bank held these bills as an original indebtedness, and that the aggregate thereof amounted to the sum mentioned, is not denied.    It is admitted in the 4th exception of appellant.

It is, however, claimed that it constituted only a contingent liability, and not a primary debt of Gunhouse & Co.

It is apparent that these bills were not drawn against funds; on the contrary, they were accommodation paper, the money being advanced to Gunhouse & Co. to enable them to carry on. their business; and although it was advanced on accepted drafts and bills, yet it was understood all the time that Gunhouse & Co. were the real debtors.    Why else did Gunhouse & Co. execute the July bond and mortgage ?    To what other indebtedness did they refer in the following language found in the bond: "Whereas the said I. L. Gunhouse & Co. stand indebted to the National Bank of Chester, aforesaid, in certain large sums of money, either as makers, payers, or endorsers, or as drawers or acceptors of bills of exchange as well as memorandum checks "?    Now this language could have referred to nothing else, as the bank at that time held no other claim upon this firm.

It is true that an accommodation acceptor may be sued primarily, and when sued, he cannot deny his primary liability; but it is well understood that the debt is the debt of the drawer, and he may be treated with for payment in the first instance. 1 *Dan. Neg. Inst.* 433.    This course seems to have been pursued here, not only in the execution of the bond and mortgage on July 12th, 1876, but also upon the final settlement, when the three notes forming the basis of this action were given.    Gun-

house & Co. recognized their liability in both of these transactions, also in their failure to answer the complaint, wherein it was expressly charged that the amount sued for is the balance of the debt secured by the mortgage described in the complaint. It is too late now to take the position found in exceptions 1 and 4, that this is only a contingent liability. These exceptions are overruled.

Exceptions 2, 3, 5, 6, 7, and 8 claim in different forms that it was error in the judge to find, that the amount now due was the balance of the original indebtedness, and submit that he should have found that it was a new debt, contracted after the execution of the second mortgage, and therefore should have been postponed to that mortgage. Let us examine the testimony upon this subject.

John J. McLure, sworn as a witness, said : " I am the president of the National Bank of Chester, and have been continuously since its organization in 1871. July 12th, 1876, I was president ; I knew the firm of Gunhouse & Co.; on July 12th, they were indebted to the plaintiff in drafts, bills of exchange, and notes in a sum exceeding $30,000 ; the Board of Directors were not satisfied with the condition of the debt, upon an examination made a short time before, and they requested Gunhouse & Co. to give additional security, which they furnished in the bond and mortgage set forth in the complaint." " It was then understood that the bank would not increase their indebtedness, but would carry it, they reducing it as rapidly as possible, and so long as they would keep it in active bankable form." He said further that the notes sued on show the balance of the indebtedness of I. L. Gunhouse & Co. to the plaintiff—the aggregate remainder or balance of the original debt due July 12th, 1876 ; that I. L. Gunhouse & Co. had no open running account in the bank other than the usual cash deposit account. He said he knew the amount sued for is the balance of the old indebtedness, and that his knowledge was derived not altogether from the books, but from his own knowledge of the business of the bank ; that Gunhouse & Co. had repeatedly acknowledged this debt as being the balance of the old debt.

The book-keeper of the bank and the cashier corroborated

the statements of the president, and did not hesitate to say that the debt now sued was the balance of the old debt secured by the mortgage, these statements being based upon information derived from the books, and from their official connection with the business of the bank. To this is added a statement of the new account of Gunhouse & Co., beginning November 27th, 1876, and running to January 18th, 1878, inclusive, from which it appears that on the day first named Gunhouse & Co. had nothing to their credit; and although during that period they made very large deposits, amounting to something over $100,000, yet upon the last-named day the credits and debits balanced exactly; besides, these accounts were balanced uniformly by the week, showing that no large indebtedness could have originated in this way.

The facts relied on contravene, first, that the items going to make up the present indebtedness had not been traced back, through the books, to the original drafts, notes, and bills of exchange, by the officers of the bank; that all of the original bills, notes, etc., had disappeared, and there was no direct connection between them and the notes now in suit; that as to one of the original drafts on Strauss Bros., to which the bookkeeper had traced one of the items of the present debt, Strauss proved that this had been paid; that this was the character of the evidence relied on by the plaintiff.

It is true there was some conflict in the testimony and some uncertainty in tracing the connection between the different papers, but we cannot say, after a careful review of the whole case, that there was an entire absence of testimony in support of the findings of the Circuit Judge, or that the manifest weight of the testimony is against them. We feel constrained therefore to affirm his decree, notwithstanding the appeal has been pressed with great zeal, force, and confidence by the learned counsel for appellant. To do otherwise on our part, would be to disregard precedents, override the Circuit Judge without authority, set up the arbitrary rulings of this court, instead of law as the principle upon which cases are to turn, and render the administration of justice uncertain, perplexing, and wholly unsatisfactory.

There is no ground for the position that the renewals must: be regarded as payment of the old debt. The rule on that subject is, that a note or other promise to pay is never considered as payment of a precedent debt, unless there be a special agreement to that effect, or unless it actually produces payment, and the onus is upon the party alleging such payment to prove it. *Costelo* v. *Cave*, 2 *Hill*, 528; *Bank* v. *Bobo*, 9 *Rich.* 31; *Adger & Co.* v. *Pringle*, 11 *S. C.* 547; *Thomas* v. *Kelly*, 3 *S. C.* 214; *Fraser* v. *Hext*, 2 *Strob. Eq.* 258.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.